UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRED WAYNE HELVY, CDCR #H-72048, <br><br> Plaintiff, <br><br> vs. <br><br> DANIEL PARAMO, et al., <br><br> Defendants. | Case No.: 3:20-cv-01144 JAH-MSB <br><br> **ORDER:** <br><br> **1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 2]; and** <br><br> **2) DISMISSING COMPLAINT PURSUANT TO 28 U.S.C. § 1915(e)(2) AND § 1915A(b)(1)** |

FRED WAYNE HELVY ("Plaintiff"), incarcerated at California Medical Facility ("CMF") located in Vacaville, California, is proceeding pro se in this case with a civil rights Complaint filed pursuant to 22 U.S.C. § 1983 (ECF No. 1).

Plaintiff has not prepaid the $400 civil filing fee required by 28 U.S.C. § 1914(a); instead, he has filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

/ / /

/ / /

## I. Motion to Proceed IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

In support of his IFP Motion, Plaintiff has submitted a copy of his CDCR inmate trust account statement and prison certificate. *See* ECF No. 2 at 4-6; 28 U.S.C. § 1915(a)(2); S.D. CAL. CIVLR 3.2; *Andrews*, 398 F.3d at 1119. This statement shows that Plaintiff has had an average monthly deposit of $10.00 but only had an available balance of $0.01 at the time of filing. *See* ECF No. 2 at 4. Thus, the Court assesses Plaintiff's initial partial filing fee to be $2.00 pursuant to 28 U.S.C. § 1915(b)(1) but acknowledges he may be unable to pay even that small initial fee at this time. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered.").

Therefore, the Court GRANTS Plaintiff's Motion to Proceed IFP (ECF No. 2), declines to exact the initial filing fee because his trust account statements indicate he may have "no means to pay it," *Bruce*, 136 S. Ct. at 629, and directs the Secretary of the CDCR or his designee, to instead collect the entire $350 balance of the filing fees required by 28 U.S.C. § 1914 and forward them to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1). *See id.*

## II.     Sua Sponte Screening per 28 U.S.C. § 1915(e)(2) and § 1915A

### A.     Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the

1  targets of frivolous or malicious suits need not bear the expense of responding.'"
2  *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citations omitted).

3      "The standard for determining whether a plaintiff has failed to state a claim upon
4  which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of
5  Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d
6  1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir.
7  2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard
8  applied in the context of failure to state a claim under Federal Rule of Civil Procedure
9  12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted
10 as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.
11 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

12     Detailed factual allegations are not required, but "[t]hreadbare recitals of the
13 elements of a cause of action, supported by mere conclusory statements, do not suffice."
14 *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief
15 [is] ... a context-specific task that requires the reviewing court to draw on its judicial
16 experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned,
17 the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility
18 standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

19     B.    <u>Rule 8</u>

20     Plaintiff's Complaint consists of over twenty-five (25) pages of rambling allegations
21 against thirteen (13) Defendants arising from actions that were alleged to have occurred in
22 2017. (*See* Compl. at 1-28.) As an initial matter, the Court finds that Plaintiff's Complaint
23 fails to comply with Rule 8. Rule 8 of the Federal Rules of Civil Procedure provides that
24 in order to state a claim for relief in a pleading it must contain "a short and plain statement
25 of the grounds for the court's jurisdiction" and "a short and plain statement of the claim
26 showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(1) & (2). *See McHenry v.*
27 *Renne*, 84 F.3d 1172, 1178–80 (9th Cir. 1996) (upholding Rule 8(a) dismissal of complaint
28 that was "argumentative, prolix, replete with redundancy, and largely irrelevant"); *Cafasso,*

*United States ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011) (citing cases upholding Rule 8 dismissals where pleadings were "verbose," "confusing," "distracting, ambiguous, and unintelligible," "highly repetitious," and comprised of "incomprehensible rambling," while noting that "[o]ur district courts are busy enough without having to penetrate a tome approaching the magnitude of *War and Peace* to discern a plaintiff's claims and allegations."). For these reasons, the Court finds that Plaintiff's entire Complaint should be dismissed for failing to comply with Rule 8.

### C.    Plaintiff's Allegations

Plaintiff alleges that he was in the Enhanced Outpatient Program ("EOP") while he was housed at the Richard J. Donovan Correctional Facility ("RJD") in 2017. (*See* Compl. at 6.) Plaintiff claims Defendant Obregon was his "assigned clinician for 15 months." (*Id.*) Plaintiff alleges that they met "one on one, every other week" and Obregon was "overly sexual in appearance." (*Id.*) Plaintiff states that "[o]n more than one occasion, the words of Genesis 2:18 come to mind where God said, 'it is not good for man to be alone'." (*Id.*)

Plaintiff then learned that he had one last session with Obregon and "decided to see" if "her overtures had long term implications." (*Id.*) Plaintiff admits that he "did inquire about the long-term implications of her behaviors and if they indicated a desire for [Plaintiff] after [he] regained [his] freedom." (*Id.*) In March of 2017, Obregon "submitted a Rules Violation Report ("RVR") which was false and retaliatory." (*Id.*) Plaintiff claims Obregon "intended to generate animus as well as obscure her actions which precipitated the incident." (*Id.*)

Plaintiff was served with the RVR on April 1, 2017. (*See id.* at 7.) Plaintiff "read the distorted and invidious narrative it contained" and "began drafting a response and collecting affidavits." (*Id.*) Defendant Nastasi, a staff psychologist, was "assigned to conduct a mental health evaluation." (*Id.*) Plaintiff met with Nastasi on April 5, 2017 and offered Nastasi "a copy of [his] account titled 'The Incident'." (*Id.*) However, Plaintiff claims Nastasi regarded his account with "disinterest and disdain before ending the meeting." (*Id.*)

The following day, Plaintiff "received a copy of [Nastasi's] spurious evaluation in which he listed a number of psychiatric symptoms [Plaintiff] had not displayed." (*Id.*) Nastasi wrote that Plaintiff had "fixed false beliefs that are grandiose and/or persecutorial in nature and distorted impressions and rapid speech." (*Id.*) Plaintiff "asked other mental health workers" if he "displayed those symptoms" and claims that they replied, "not even remotely." (*Id.*)

A disciplinary hearing regarding the RVR was held on April 28, 2017. (*See id.* at 8.) Defendant Soto was the "Senior Hearing Officer ("SHO")." (*Id.*) Plaintiff presented a "nine (9) page packet which brought to light the actual circumstances surrounding the alleged violations and showed that the reports of both Obregon and Nastasi were not reliable and lacked credibility." (*Id.*) However, Soto found Plaintiff's documents "not relevant" and found Plaintiff guilty by "applying a corrupted version of the 'some evidence' standard." (*Id.*) As a result, Soto issued a finding of "45-day loss of good-time credit, dayroom, and phone privileges." (*Id.*)

A week after Plaintiff's disciplinary hearing, he claims Soto asked him about some of the statements he made in his documentation entitled "The Incident." (*Id.* at 9.) Soto referred to portions of Plaintiff's statements in which he described conversations he had with Obregon. (*See id.*) Plaintiff acknowledges that he told Obregon that he "apologized for not reciprocating sooner, but in [Plaintiff's] attempt to obtain justice, people have been seriously injured and killed" and as a result, his "libido has taken a big dirt nap, so please don't take it personally." (*Id.*)

A few days later, Plaintiff claims that he was "waiting for group to start" when Nastasi "rushed up" on him and told him "you will respect me, or I'll have you transferred." (*Id.*) Plaintiff alleges that his "documenting and reporting [Nastasi's] corrupt activities apparently offended him." (*Id.*)

On May 23, 2017, Plaintiff was approached by Defendant Larios who told him that "someone claimed" that Plaintiff had "threatened staff." (*Id.* at 10.) Larios told Plaintiff he was "being sent to [Administrative Segregation] for a few days until the matter is

cleared." (*Id.*)  Larios told Plaintiff that he had "rolled up [Plaintiff's] property," gave Plaintiff a property receipt, but told him he could not find Plaintiff's CDCR number "engraved on any of [his] electronics so he had placed them in the housing units property room."  (*Id.*)  Plaintiff alleges Defendant Scharr "entered the building, lock-up order in hand." (*Id.* at 11.) Plaintiff claims Scharr said "messing with Obregon, take your poison!" (*Id.*)  Plaintiff was placed in a "cage and ordered to strip out."  (*Id.*)  Larios "assured" Plaintiff that he would "get all of [his] property back." (*Id.*)

The following day, Captain Garza[2] told Plaintiff that he "knew what was going on and didn't feel the matter was all that serious." (*Id.*)  Plaintiff was told Obregon was "claiming that she would not feel safe if [Plaintiff] was allowed to stay on the yard." (*Id.*) Garza told Plaintiff "it's up to the Warden, stay strong." (*Id.*)

On June 1, 2017, Plaintiff "went before [Associate Warden] Juarez at ICC." (*Id.*) Juarez told Plaintiff that he would be "retained in Ad-Seg for 45 days for the 'staff threat' and would have an investigative employee assigned."  (*Id.*)  Plaintiff claims that his placement in Ad-Seg "created a significant and atypical hardship in relation to the ordinary incidents of prison life." (*Id.*)

Plaintiff "received the disciplinary hearing results" on July 3, 2017 which was sixty-five (65) days after his hearing.  (*Id.* at 13.) Plaintiff claims this "excessive delay" allowed Defendants to "manufacture the 'staff threat'." (*Id.*)  Plaintiff alleges that the "hearing results rely heavily upon the spurious psych evaluation submitted" by Nastasi which Plaintiff claims "was and is fiction." (*Id.*) Plaintiff alleges that evidence was "wrongfully excluded." (*Id.* at 14.)

On July 27, 2017, Plaintiff appeared before Warden Covello.[3]   Plaintiff alleges Covello told him that the "threat being investigated didn't exist" and further told Plaintiff to "be patient and he'd try to get [Plaintiff] back on the yard in a week." (*Id.*)

---

[2] Garza is not a named Defendant.
[3] Covello is not a named Defendant.

Plaintiff submitted an administrative grievance regarding his disciplinary hearing on July 31, 2017. (*See id.*) Plaintiff was notified on August 2, 2017 that a "staff separation order" was granted and "transfer was recommended." (*Id.*) When Plaintiff appeared again before Covello on August 3, 2017, he informed the ICC that "none" of his grievances "had been answered." (*Id.*) Plaintiff also told Covello that "staff is attempting to steal [his] property." (*Id.* at 15.) However, Covello purportedly told Plaintiff "we're done with you, 602 it." (*Id.*)

On August 21, 2017, Defendant Eustaquio told Plaintiff that he was "acting" Lieutenant and "was now holding the hearing for [Plaintiff's] disciplinary appeal." (*Id.*) Eustaquio told Plaintiff that one of his witnesses "lacked credibility and because [Plaintiff] had implicated himself at the disciplinary hearing, he was denying the appeal." (*Id.*) Eustaquio purportedly told Plaintiff "if you don't like it, appeal it." (*Id.*)

On August 28, 2017, Plaintiff was "transferred to California Medical Facility ("CMF") at Vacaville, California." (*Id.* at 16.)

After Plaintiff arrived at CMF, he was "ducated to R&R to pick up [his] personal property." (*Id.*) Plaintiff "discovered that not only was [his] TV missing, but also Larios chose not to document over $500 in personal property he'd been assigned to inventory." (*Id.*) Plaintiff submitted grievances regarding this missing property. (*See id.* at 15-16.) Plaintiff was "called to the counselor's office" on February 24, 2018 to have a phone call with Sergeant Servantes from RJD "pertaining to [Plaintiff's] 1st level property appeal." (*Id.*) Plaintiff claims Servantes "acknowledged that the CDCR owed [Plaintiff] a TV." (*Id.*) Plaintiff further alleges that on February 9, 2018, Chief of Appeals Voong "unlawfully screened out [Plaintiff's] supporting documents to help insure a favorable outcome to the CDCR." (*Id.*)

Plaintiff seeks $1000 in compensatory damages, $180,000 in punitive damages, and to have his disciplinary conviction "expunged." (*Id.* at 27.)

D.   Statute of Limitations

Despite the confusing nature of Plaintiff's allegations, the Court has discerned

pertinent facts to consider whether the claim is barred by the statute of limitation. The Court finds that Plaintiff's claims, alleged to arise at RJD beginning in March of 2017, and continuing until his transfer to CMF in August of 2017, are subject to sua sponte dismissal for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. §1915(e)(2) and § 1915A(b)(1) because they are time-barred.

"A claim may be dismissed [for failing to state a claim] on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). "'A complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'" *Id.* (quoting *Supermail Cargo, Inc. v. U.S.,* 68 F.3d 1204, 1206 (9th Cir. 1995)); *see also Cervantes v. City of San Diego*, 5 F.3d 1273, 1276-77 (9th Cir. 1993) (where the running of the statute of limitations is apparent on the face of a complaint, dismissal for failure to state a claim is proper, so long as Plaintiff is provided an opportunity to amend in order to allege facts which, if proved, might support tolling); *see also Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 216 F.3d 764, 788 (9th Cir. 2000) (court may raise the defense of statute of limitations sua sponte).

Section 1983 contains no specific statute of limitation; therefore, federal courts apply the forum state's statute of limitations for personal injury actions. *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004); *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004); *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999). Before 2003, California's statute of limitations was one year. *Jones*, 393 F.3d at 927. Effective January 1, 2003, the limitations period was extended to two. *Id.* (citing Cal. Civ. Proc. Code § 335.1). The law of the forum state also governs tolling. *Wallace v. Kato*, 549 U.S. 384, 394 (2007) (citing *Hardin v. Straub*, 490 U.S. 536, 538-39 (1989)); *Jones*, 393 F.3d at 927 (where the federal court borrows the state statute of limitation, the federal court also borrows all applicable provisions for tolling the limitations period found in state law).

Under California law, the statute of limitations for prisoners serving less than a life sentence is tolled for an additional two years. CAL. CIV. PROC. CODE § 352.1(a); *Johnson v. California*, 207 F.3d 650, 654 (9th Cir. 2000), *overruled on other grounds*, 543 U.S. 499 (2005).  However, Plaintiff is currently serving a sentence of life without the possibility of parole ("LWOP") and therefore, is not entitled to the extra two years of tolling.[4]

Unlike the length of the limitations period, however, "the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Wallace*, 549 U.S. at 388; *Hardin*, 490 U.S. at 543-44 (federal law governs when a § 1983 cause of action accrues). "Under the traditional rule of accrual ... the tort cause of action accrues, and the statute of limitation begins to run, when the wrongful act or omission results in damages." *Wallace*, 549 U.S. at 391. Put another way, "[u]nder federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Maldonado*, 370 F.3d at 955; *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999).

In this case, the "wrongful acts" alleged to have been taken against Plaintiff at RJD occurred more than two years before he filed his Complaint on June 22, 2020, and thus, are outside California's statute of limitations.

Specifically, Plaintiff alleges his constitutional rights were violated by Defendants beginning in March of 2017 when he was housed at RJD until he was transferred to CMF in August of 2017.   Based on these allegations, the Court concludes Plaintiff had "reason to know" of his injuries at RJD as early as March 2017, more than three years before he filed this case on June 22, 2020, and after the limitations period applicable to his claims elapsed. *See Maldonado*, 370 F.3d at 955.

Finally, Plaintiff's claims could be considered timely if, in his Complaint, he alleged facts sufficient to show the limitations period may be equitably tolled. *See Cervantes*, 5

---

[4] *See* CDCR Inmate Locator, https:\\www.inmatelocator.cdcr.ca.gov (website last visited July 6, 2020.)

F.3d at 1276-77. Generally, federal courts also apply the forum state's law regarding equitable tolling. *Fink*, 192 F.3d at 914; *Bacon v. City of Los Angeles*, 843 F.2d 372, 374 (9th Cir. 1988). Under California law, however, Plaintiff must meet three conditions to equitably toll the statute of limitations: (1) he must have diligently pursued his claim; (2) his situation must be the product of forces beyond his control; and (3) Defendants must not be prejudiced by the application of equitable tolling. *See Hull v. Central Pathology Serv. Med. Clinic*, 28 Cal. App. 4th 1328, 1335 (Cal. Ct. App. 1994); *Addison v. State of California*, 21 Cal.3d 313, 316-17 (Cal. 1978); *Fink*, 192 F.3d at 916.

As currently pleaded, however, the Court finds Plaintiff has failed to plead any facts which, if proved, would support any plausible claim for equitable tolling. *See Cervantes*, 5 F.3d at 1277; *Iqbal*, 556 U.S. at 679. Accordingly, the Court finds that because it is clear from the face of Plaintiff's Complaint, as it is currently alleged, that his claims against all Defendants are barred by the statute of limitations, those claims and Defendants are subject to sua sponte dismissal for failing to state a claim upon which section 1983 relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); 1915A(b)(1); *Lopez*, 203 F.3d at 1126-27; *Rhodes*, 621 F.3d at 1004.

D.  <u>Leave to Amend</u>

While the Court has dismissed as untimely all claims alleged to arise at RJD, it must also grant Plaintiff leave to amend them–if he can. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)); *Cervantes*, 5 F.3d at 1277 (noting that a time-barred action may not ordinarily be dismissed at pleading without leave to amend unless "some fact, evident from the face of the complaint, support[s] the conclusion that the plaintiff could not prevail, as a matter of law, on the equitable tolling issue.").

Should Plaintiff's Amended Complaint fail to allege facts sufficient to establish the timeliness of his claims, however, he is hereby cautioned that the Court will dismiss the

entire action without further leave amend.

**III.   Conclusion and Order**

Based on the foregoing, the Court:

1) **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

2) **DIRECTS** the Secretary of the CDCR, or their designee, to collect from Plaintiff's trust account the $350 filing fee owed in this case by garnishing monthly payments from his account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3) **DIRECTS** the Clerk of the Court to serve a copy of this Order on Ralph Diaz, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

4) **DISMISSES** Plaintiff's Complaint (ECF No. 1) sua sponte for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1) and for failing to comply with Rule 8.

5) **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file an Amended Complaint which cures the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived. *See* S.D. CAL. CIVLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

Plaintiff's Amended Complaint, should he elect to file one, must be captioned as his "First Amended Complaint," contain S.D. Cal. Civil Case No. 20cv1144 JAH (MSB) in it

caption, and comply both with FED. R. CIV. P. 8 and with S.D. CAL. CIVLR 8.2.a. The Court **DIRECTS** the Clerk of the Court to provide Plaintiff with a blank copy of its form Complaint under the Civil Rights Act, 42 U.S.C. § 1983 for Plaintiff's use and to assist him in complying with LR 8.2.a's requirements.

If Plaintiff <u>fails</u> to file an Amended Complaint within 45 days, *or* if he files an Amended Complaint that still fails to allege any plausible claim for relief against any Defendant that is timely, the Court will dismiss all untimely claims without further leave to amend pursuant to 42 U.S.C. § 1915(e)(2) and § 1915A.

**IT IS SO ORDERED**.

Dated: July 8, 2020

HON. JOHN A. HOUSTON
United States District Judge